### Alonzo J. Cutler v. Jessie Warner Cutler.

1. APPEALS—*Order for Temporary Alimony.*—An order for temporary alimony is appealable in this State.

2. SCIRE FACIAS—*To Enforce the Payment of Money.*—Scire facias is a judicial writ founded upon a record, and when brought to enforce the payment of money, it must be for a specific sum, or perhaps in addition, interest or exchange as an incident to the debt.

3. SAME—*Will Not Lie for Temporary Alimony.*—A writ of *scire facias* will not lie for temporary alimony from the date of the process until the termination of the suit, where the amount claimed to be due has not been ascertained by the judgment of the court, nor rests in computation.

4. INTERLOCUTORY ORDER—*Not a Final Judgment.*—An interlocutory order is not a final judgment and can avail nothing as a bar, or as evidence. until the judgment, with its verity as a record, settles finally and conclusively the questions at issue.

**Bill for Temporary Alimony.**—Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1899. Reversed. Opinion filed May 10, 1900.

**Statement of Court.**—This is an appeal from a judgment rendered in the trial court in favor of appellee and

against appellant, for the sum of $31. The suit is for balance of temporary alimony claimed to be due to appellee. The cause was tried by the court without a jury. The facts are substantially as follows: Appellant and appellee were formerly husband and wife, and appellant sued appellee for a divorce in the Superior Court of Cook County. Such proceedings were had in the suit that October 13, 1898, a decree of divorce was entered in favor of the complainant, appellant here, in which the court found, among other things, "that the defendant had committed adultery subsequently to her marriage with the complainant, and that the defendant is a person wholly unfit to have the care, custody, control or education of said children."

On the trial of the present suit it was admitted "that on the 21st day of September, 1898, at the trial of said divorce suit, the said Jessie Warner Cutler, by her counsel therein, admitted in open court that she was guilty of adultery, as charged in the bill filed in said divorce suit, and that on the last mentioned date the judge hearing said divorce suit rendered his decision orally on all points involved therein, but a dispute arising between counsel as to the form of the decree expressing such oral decision, the judge hearing such divorce suit took two drafts of such decree, prepared by counsel for the respective parties, and retained the same until October 13, 1898, when he caused to be entered one of said drafts of decree, to wit, the said decree of divorce hereinbefore set forth."

January 3, 1898, while the divorce suit was pending the following order was entered:

" Alonzo J. Cutler, Complainant,
v.
Jessie Warner Cutler, Defendant.

On motion of solicitors for defendant it is ordered by the court that the complainant pay to the solicitors for the defendant the sum of one hundred ($100) dollars, to be applied on account of her reasonable and necessary fees to enable the defendant to prepare and make her defense herein, the further allowance or question of further allowance in this behalf being reserved for the future considera-

tion of the court; that said sum be paid within ten days
from said date; also that complainant pay to said defend-
ant or her solicitors the sum of seven ($7) dollars per week
from this date, payable weekly as temporary alimony dur-
ing the pendency of this suit, and until the further order of
the court."

Appellant in obedience to the foregoing order paid to
appellee the temporary alimony therein ordered to be paid
down to September 12, 1898, and appellee's claim is for tem-
porary alimony from September 12, 1898, to October 13,
1898, when the final decree was rendered, at the rate of $7
per week.

WALTER S. HULL, attorney for appellant.

CRATTY, JARVIS & CLEVELAND, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The suit was brought by appellee on the theory that the
order of January 3, 1898, is a final order in the sense that
an action at law may be maintained on it as on a judgment
at law, that it may be enforced by a suit at law before a
justice of the peace.

Appellee's counsel have cited a number of cases and also
text books to the effect that an action at law will lie on a
final decree, domestic or foreign, for alimony, but in every
case and text book cited, the decree involved or referred to
is a final decree settling in all respects the controversy
between the parties. No case has been cited in which an
action at law was held to be maintainable for arrears of
alimony *pendente lite*.

Counsel also cite authorities to the effect that an order
for temporary alimony to be paid in installments at stated
times, is final in the sense that it is appealable. That such
an order is appealable is settled in this State, but this is by
no means conclusive that such order is of equal dignity with
a judgment for a sum certain, which is finally decisive of
the matters in controversy, and in respect of which noth-
ing remains to be done, or, assuming its validity, can be
done, except to enforce it.

Chestnut v. Chestnut, 77 Ill. 346, was *scire facias* for arrears of temporary alimony. The order relied on by the plaintiff directed $1,600 per annum to be paid to the wife, from the date of service of the summons till the termination of the suit, $400 to be paid within twenty days from the entry of the order, and thereafter, computing from June 19, 1893, $400 quarterly, and if the suit should be disposed of before the expiration of any quarter, then ratably for such fractional quarter. The court say:

"*Scire facias* is a judicial writ founded upon a record, and when brought to enforce the payment of money, it must be for a specific sum, or perhaps, in addition, interest or exchange as an incident to the debt. But there is no such record declared on in this action.  *  *  * What purports to be an order made on the 12th day of August, was only for temporary alimony from the date of the process until the termination of the suit, and in case the suit should be disposed of before the expiration of any given quarter, only a ratable proportion should be paid. *Scire facias* will not lie on such a record. Before it can be known what amount is due, resort must be had to evidence *aliunde*. The amount claimed in the present action to have accrued to plaintiff, under the order, is $639.88, and whether that is the true amount is a matter of evidence. It will be observed the amount claimed to be due has not been ascertained by the judgment of the court, nor does it rest in computation."

We think the language quoted equally applicable to the order in question and to the present suit on the order. In the present suit, the record does not show the amount claimed to be due. This required evidence, which was furnished by the admission of the parties as to what had been paid. We are of opinion that the order sued on must be regarded as interlocutory, in the sense that it is not final for the purpose of a suit at law based on it. By its terms the alimony is payable during the pendency of the suit "and until the further order of the court." No execution could have issued on the order, and the court, at any time pending the suit, could have modified or set it aside altogether, for good cause shown.

In Webb v. Buckelow, 82 N. Y. 555, the plaintiff relied on an interlocutory order, which seemed to settle his rights

in the premises except as to the amount due, in so far as an interlocutory order could have such effect. The court, after stating the general rule as to the conclusiveness of judgment, say:

"It is, therefore, only a final judgment upon the merits, which prevents further contest upon the same issue, and becomes evidence in another action between the same parties or their privies. Until final judgment is reached the proceedings are subject to change and modification; are imperfect and inchoate, and can avail nothing as a bar, or as evidence, until the judgment, with its verity as a record, settles finally and conclusively the questions at issue. An interlocutory order is not such a judgment. It is not a judgment at all. (Code of Proc., Sec. 245; Belmont v. Ponvert, 3 Robt. N. Y. 693.) And if as an order it partakes, in equity cases, of the character of what was long known as an interlocutory decree, yet, whenever it is not final, whenever it fails to fix and determine the ultimate rights of the parties, wherever it leaves room for a final decision yet to be made, it is not admissible in another action, for the plain reason that it has finally decided and settled nothing. Until the judgment comes, no man can know what the ultimate decision will be."

In Allen v. Allen, 100 Mass. 373, the court state very cogent reasons why an action at law should not be maintained for the enforcement of a final domestic decree, which reasons apply much more strongly to an order for alimony *pendente lite.* Ib. 374.

If the order in question is final, as contended by appellee's counsel, the Superior Court, which made the order, has ample power to enforce it, and we can conceive of no reason why an application was not made to that court for its enforcement, instead of bringing suit before a justice of the peace some four months after the final decree, except it be that counsel apprehended that the court would not have enforced the order. It is admitted that the alimony was paid to September 12th. On the 9th day after that time, or September 21st, appellee, by her counsel, admitted in open court, on the trial of the cause, that she was guilty of adultery, and the court then and there decided the cause, only leaving to be determined the form of the decree.

Cutler v. Cutler.

There were some property rights involved, and it appears from the evidence that counsel for each party had prepared a draft of decree. After appellant's admission that she was guilty of adultery, and the oral decision in favor of appellant by the court, we think it extremely probable that the court would have refused, if applied to, to enforce further the order for temporary alimony, and we think it clear that the court would have been amply warranted in so refusing.

In Rawson v. Rawson, 37 Ill. App. 491, the court, McAllister, Justice, delivering the opinion, say :

"The law is well settled in England and in this country, that adultery on the part of the wife operates as a discharge of the husband from all obligations to support her," citing numerous cases.

Actions at law on such orders as the present would be unnecessary litigation, and would involve additional and unnecessary expense to the parties, because relief can be had by one entitled thereto in a summary way, on proper application to the chancery court. If such action as the present, brought four months after the final decree, can be maintained on such orders as that in question, no reason can be perceived why like suits may not be brought pending the divorce suit, and while the court still retains jurisdiction to set aside the order sued on. Suppose that a suit at law should be brought and judgment recovered pending the divorce suit, and that the chancery court, having ample power in the premises, should subsequently set aside the order on which the judgment was based. In such case two questions would arise : First, whether, the order having been in the breast of the chancellor when the action at law was commenced, and when the judgment was rendered, with power to modify it or set it aside, the court of law had jurisdiction; and secondly, whether a judgment, legally deprived of the only foundation on which it rested, could be enforced. The law does not contemplate such inconsistencies. We are of opinion that the action can not be maintained.

The judgment will be reversed.