In the Matter of the CITY OF NEW YORK, Relative to Acquiring Title to Real Property Required for the HARLEM RIVER DRIVE.

In the Matter of the CITY OF NEW YORK, Relative to Acquiring Title to Real Property Required for the HARLEM RIVER WATERFRONT.

Supreme Court, Special Term, New York County, January 31, 1951.

*Morris Wagman* for Lou-Ann Holding Corp., claimant.

*John P. McGrath, Corporation Counsel* (*Harry E. O'Donnell* and *Samuel K. Handel* of counsel), for City of New York.

EDER, J.   This court previously granted to the owner-claimant herein, Lou-Ann Holding Corp., awards totaling the sum of $56,360, with respect to damage parcels 5H, 12W, 13W, 14W, 15W and 18W and for which claims were filed by it in this condemnation proceeding.

In the decision originally made damage parcel 18W, which relates to tax lot 50, was not mentioned; through inadvertence damage parcel 19W, which relates to tax lot 62, was included instead of damage parcel 18W; correction and substitution were later made upon application of the claimant.

The awards were made as follows: Land including bulkhead rights $36,860, improvements physical bulkhead and platform, $15,000, $4,500; total $56,360.

For many years there has existed and continues to exist on tax lot 62, unpaid taxes and interest and a tax lien in the sum of $30,525.56. These unpaid taxes and the tax lien are asserted by the city against the payment of the awards to the claimant. These taxes were assessed to an unknown owner as a tax on bulkhead " rights ".

Claimant has never owned and has never claimed ownership of tax lot 62 and has never made or filed any claim with respect thereto and has never paid any taxes thereon. Nonetheless the city seeks to impose ownership upon the claimant and to thereby justify its endeavor to assert said unpaid taxes and lien against said awards.

The claimant protests and contests this attempt of the city and in this connection challenges the validity of such assessment and the tax imposed and the validity of the tax lien, as well.

The validity of a tax imposed on bulkhead *rights* as a separate and independent species of taxable real property, without taxing the bulkhead or land to which they are appurtenant or form a part or of which they are an incident, was considered on the motion to substitute damage parcel 18W in place of the erroneously included damage parcel 19W, and it was there pointed out that the bulkhead rights are part of and incidental to the land and that such rights standing alone cannot be separately and independently taxed; that they may be taxed only as part of the real estate to which they appertain and to which they are incident (*Matter of City of New York [Harlem River Drive]*, 199 Misc. 279).

Unlike tax lot 50 (D. P. 18W), which has a physical bulkhead, tax lot 62 (D. P. 19W) has no physical bulkhead and apparently never had one; only bulkhead " rights " were assessed and a tax imposed therefor. In other words, though no tangible property existed, an intangible thing, incorporeal property viz., bulkhead " rights " were made the subject of an assessment and tax.

The matter is again presented by the city on the instant motion of the claimant to compel payment of the awards granted to it.

The court sees no reason to recall its original views and the conclusions expressed in the opinion on the prior motion to amend its decision and to substitute damage parcel 18W, in place of damage parcel 19W. The court adheres to its original view that bulkhead rights cannot validly be assessed and taxed separately and independently of the bulkhead, wharf or pier to which they are appurtenant and form a part.

The city contends, however, that such bulkhead " rights " may now be taxed as réal property, separately and independently from the bulkhead itself, and in support of this premise relies on subdivision 6 of section 2 of article I of the Tax Law, entitled " Definitions ", which, so far as here relevant, provides : " The terms ' land,' ' real estate,' and ' real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; all wharves and piers *including* the value of the right to collect wharfage, cranage or dockage thereon ". (Italics mine.)

It is then asserted by the city that the statute thus declares that every conceivable type of water right and every conceivable type of structure on and over land under water, " *existing independent of land* ", is taxable real estate, and that it covers with particular preciseness the " bulkhead rights " arising under city water grants.

The statute does not so declare. There is not a word therein that " bulkhead rights " constitute taxable real estate " existing independent of land ". What it plainly and expressly declares is taxable real estate within the statutory definition is a wharf, also a pier, which includes a bulkhead in that category and which has the same characteristics and serves the same function and purpose as a wharf and pier (*Boston Molasses Co.* v. *Commissioner of Internal Revenue,* 155 F. 2d 45, 47 ; 68 C. J., Wharves, § 1, and cases cited; see, also, 32 Words & Phrases [Perm. ed.], Pier, pp. 520–521). Indeed, this is conceded in the city's brief — " a bulkhead is a wharf ". The statute includes the tangible, and the incidental, concomitant right to collect wharfage, cranage and dockage. The worth of such right is included in computing the value of the property which is to be the subject of the assessment and tax, namely, the wharf, pier or bulkhead *and* the incidental right to collect wharfage, cranage and dockage.

The term employed is not " existing independent of land "; the term used is " *including* the value of the right to collect ". " Including ", as here used, is consonant with judicial construction holding that wharfage or bulkhead *rights* are incident to and part of the wharf and pier and cannot be separately and independently taxed. The tangible and intangible must be united and present; the element of physical property (bulkhead) and the right to operate the same must exist in conjunction with each other. (Compare, on the subject of the union of tangibles and intangibles, *Langdon* v. *Mayor,* 93 N. Y. 129, 150; *People*

*ex rel. Barron* v. *Knapp,* 208 App. Div. 127, affd. 239 N. Y. 581; *People ex rel. New York Central R. R. Co.* v. *State Tax Comm.,* 264 App. Div. 80.) See, also, *Matter of Dept. of Public Parks* (53 Hun 280) on the subject of a separation of the value of water rights as separate from the land, and where the court said (pp. 298–299): '' The further objection is made that no award appears to be made for the value of the water-power, and none for lands under the water of the Bronx river, the commissioners confining themselves solely to the upland measurement. The claim as to the value of the water-power seems to be based upon an entirely erroneous principle. No award for the water-power, separate from the land, could possibly be made, as the power was a mere adjunct and appurtenance of the land, and is included in the award therefor.'' '' Including '', here, means '' as a part of '', '' as incidental to '', '' in conjunction with '' the wharf or pier or bulkhead, and not as separate and independent real property.

No such intent, as claimed by the city, is manifested in the language employed in the statutory definition, and, certainly, it does not contain any such verbiage as is ascribed to it by the city, — '' existing independent of land.'' And the statement, '' The statute so declares '', is an erroneous deduction.

If it was the legislative intent to render ineffective the uniform ruling of the courts which has existed for so long a time, in complete accord, that bulkhead rights may not be taxed separately and independently of the bulkhead and land itself, it is not evidenced by the language employed in section 2 of article 1 of the Tax Law and it is a fair assumption that if such was the legislative intent the Legislature would have so indicated in language clear and unambiguous. In the absence thereof the court should not be astute to give it a different construction (*People* v. *Farini,* 239 N. Y. 411, 413; *Marx* v. *Commerce Realty Corp.,* 199 Misc. 384).

Nothing has been brought forth to justify the claim that the city may assess and impose a valid tax on bulkhead '' rights '' as a separate taxable unit of real property as the city has done with respect to tax lot 62 (Damage Parcel 19W) and such assessment and tax and the tax lien must be held to be invalid and of no force or effect with respect to the awards granted to the claimant.

Assuming the assessment, the tax and the tax lien were valid, they could not affect the awards made to the claimant. The taxes are assessed to an *unknown owner* and the claimant may not be

arbitrarily or gratuitously saddled by the city with the ownership of this tax lot 62 in order to furnish it with a basis for asserting these unpaid taxes and the tax lien against the payment of the awards made to the claimant.

It is nowhere shown that the claimant has ever claimed ownership of tax lot 62, in any form, and it definitely appears that the ownership is listed as unknown.

If it is the claim of the city that tax lot 62 (Damage Parcel 19W) formed part of the property originally conveyed with lot 50 (Damage Parcel 18W) under the water grant to claimant's predecessor Marietta Vanderveer, no one could tell, in making a search of the tax records in connection with lot 50, that lot 62 was a part and parcel of lot 50. The notation on the tax records is *86 feet of bulkhead*, and the *owner* listed as *unknown,* and this is certainly not sufficiently informative as a description to indicate that it was part of lot 50.

To support its right to validly tax bulkhead '' rights '' as a separate and independent taxable unit of real property the city states that it has been taxing bulkhead rights for a long term of years and that this should be determinative of the validity of the city's tax lien against lot 62, at least upon the theory of practical construction by the city taxing authorities that they possessed the power to assess and tax bulkhead rights solely as such and as a separate and independent taxable unit of real estate.

The rule is inapplicable here. It is applicable where the taxpayer has paid taxes on the property subject to the assessment in question. This rule or doctrine arises only from a course of conduct and no matter how long the usage has been established, or how general the acquiescence in the customary construction, it will not be permitted to continue if it is plainly illegal (59 C. J., Statutes, § 608, p. 1024). A mistake as to the law gives no right to insist that the mistake shall be continued. In cases of doubt such statutes should be construed and resolved in favor of the property owner (*City of Rochester* v. *Fourteenth Ward Assn.,* 183 N. Y. 23, 30). No rights and powers to assess and tax will be permitted except those specified or fairly to be implied from what is granted (61 C. J., Taxation, § 729, p. 586).

In this connection it is to be observed that the claimant here has at no time paid any taxes that were imposed against lot 62, and again it must be noted that they were assessed to an unknown owner. No merit is perceived in this position or suggestion of the city.

The city also advances the claim that the payment of taxes by the claimant on tax lot 64 (Damage Parcel 15W) which consists of 105 feet of bulkhead rights should be sufficient to establish the validity of the city's tax lien under the rule of practical construction.

There is no substance to this claim. The fact that taxes were paid on lot 64 can have no bearing on the issues with respect to the validity of the city's tax lien and the additional unpaid taxes affecting lot 62, assessed to an unknown owner.

Assuming, again, that the city had the right to separately and independently tax bulkhead rights as a species of taxable real property, there is a further reason why the assessment and tax imposed and the tax lien are invalid. It is because the description with respect to tax lot 62 is vague, indefinite and insufficient for a valid assessment. The description must be sufficiently informative to enable a taxpayer to know with reasonable certainty what property is being assessed and taxed (*Matter of New York Central & Hudson Riv. R. R. Co.,* 90 N. Y. 342, 349; *Hunt* v. *Dekin,* 187 Misc. 649, affd. 273 App. Div. 800, affd. 298 N. Y. 575; *Rupert* v. *Village of North Pelham,* 139 App. Div. 302; *French* v. *City of New Rochelle,* 141 App. Div. 8; *People ex rel. Albany & Bethlehem Turnpike Rd.* v. *Selkirk,* 180 N. Y. 401, 405).

It appears that on the tax assessment rolls lot 62 was described as 86 feet of bulkhead and this is wholly inadequate to convey to any one that it is a part and parcel of lot 50 and that the assessment and tax of lot 62 were in conjunction or in any way associated with tax lot 50, taxes for which said lot 50 were imposed by the city and paid by the claimant. For all purposes and so far as the record shows the value of the wharfage rights was included in the assessment against lot 50.

These assessments against lot 62 do not contain any description or identification of claimant's bulkhead or wharfage rights which were conveyed to the claimant as a part of and appurtenant to lot 50 but to the converse the assessment rolls show that the property described as 86 feet of bulkhead was assessed as part of lot 62.

It is quite apparent that the said assessments were not at any time liens against the bulkhead rights conveyed with lot 50 to the claimant, and it follows that the tax lien is not a lien against damage parcel 18W and the rights appurtenant thereto or upon the award made therefor and is not a lien upon any of the other awards granted to the claimant.

After due consideration and reflection the ultimate conclusion is reached that none of the claims or contentions of the city against the payment of the awards made to the claimant are persuasive or tenable.

The claimant, by this application, seeks an order adjudging that the said tax lien of the city (bearing No. 31927, in the sum of $30,525.56, and interest) is not a lien upon said awards or any part thereof and directing that the comptroller pay said awards to the claimant free and clear of said tax lien and the unpaid taxes. The movant is entitled to the relief sought and the motion is, accordingly, granted.

Settle order.